| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL D. SMITH, RAY GARTON, | ) | Criminal Action No. |
| CHRISTOPHER CELLO SMITH, | ) | 3:08-cr-31-JMH |
| SHAUN MICHAEL SMITH, and | ) | 3:10-cr-1-JMH |
| JOSHUA SCOTT HARRIS, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARK IRWIN, | ) | |
| | ) | |
| Defendant. | ) | |

** ** ** ** **

This matter is before the Court for entry of an order and judgment with respect to restitution in the above-captioned cases. The parties have filed briefs [3:08-cr-31-JMH, DE 719, 729, 730, 731, 734, 741, 745, and 749; 5:10-cr-1-JMH, DE 45 and 46]. In their briefs, Defendants Michael D. Smith and Christopher Cello Smith have articulated objections to the entry of an order of restitution as proposed by the United States, and Defendants Shaun

-1-

Michael Smith, Joshua Scott Harris, Ray Garton, and Mark Irwin have stated that they do not object to the position taken by the United States with respect to restitution.[1]  Additionally, argument was heard by the Court during a hearing on this issue.

Ultimately, the Court is adequately advised and, having considered the relevant law, the evidence presented in the course of the proceedings before this Court, the parties' pleadings, and the parties' arguments during the hearing on this matter, concludes that restitution is due to the victims in this matter in the amount of $13,691,320.43, as set forth below.

## I.   Factual Background

Frankfort Criminal Action No. 08-cr-31-JMH arises from a scheme to defraud individuals by misrepresenting the risk factors associated with investments in a company, Target Oil & Gas.  The

---

[1]   A Response brief was also filed on behalf of Defendant Michael D. Smith by his now former counsel, J. Guthrie True [DE 732].  Additionally, Christopher Cello Smith has filed a Notice of Joinder and Adoption [DE 748] of Defendant Michael D. Smith's Response brief [DE 745].

By virtue of the proposed order filed by Defendant Michael D. Smith, the Court understands that he also seeks leave to file a motion to set aside his conviction.  Assuming that Defendant seeks to file a Motion for a Judgment of Acquittal under Fed. R. Crim. P. 29, he is out of time since the guilty verdict was returned and the jury discharged well over a year ago.  *See* Fed. R. Crim. P. 29(c)(1) ("A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.").  With respect to any desire to file a Motion for a New Trial under Fed. R. Crim. P. 33, the Court notes that he has now done so and that, regardless of the merits of that motion, he did not need this Court's leave to do so.  Accordingly, this request for relief will be denied.

scheme was, ultimately, the culmination of the efforts of Defendants Michael D. Smith, Christopher Cello Smith, Ray Garton, Shaun Michael Smith, and Joshua Scott Harris, as well as former co-Defendant Mark Irwin.

Defendants Ray Garton, Shaun Michael Smith, and Joshua Scott Harris pled gulty to the indictment in Frankfort Criminal Action No. 08-cr-31-JMH. The charges in Frankfort Criminal Action No. 08-cr-31-JMH have been dismissed with respect to Mark Irwin, but he has entered a guilty plea in another criminal matter before this Court, Frankfort Criminal Action No. 3:10-cr-1-JMH, in which restitution is also sought in the same vein. As related at trial in 3:08-cr-31-JMH and during the hearings at which they entered their guilty pleas in their respective cases, each of these defendants played a significant role in making the Target Oil & Gas scheme work. Ray Garton prepared geological reports – often non-site specific – and other documentation that were then used to persuade potential investors of the soundness of an investment in site-specific well programs. Shaun Michael Smith provided administrative and financial services to the company in its office, transferring money between accounts, depositing checks, and other activities. Joshua Scott Harris was involved through his work in the day-to-day activities of the office and working with individuals who solicited investments on the telephone. Mark Irwin and Christopher Cello Smith were the voice of scheme, on the phone

with potential investors, pitching the well programs and securing the investments with aggressive techniques, often representing the wells being sold or wells drilled in the past as providing practically if not absolutely guaranteed returns – even if the well had not yet been drilled or, once drilled, had never delivered on the promise of returns.  Michael D. Smith was the leader of it all. Ultimately, he is responsible for having used investor money to drill at will and without regard to what investors had been sold. His business practices to this end included encouraging his salesmen to use no-holds barred tactics to bring in investors and working together with others to devise promotional materials which failed to adequately disclose the bona fides of the potential well-sites, including the specifics of how well sites were chosen or accurate identification of the location where some of the wells would ultimately be drilled.

Already this Court has sentenced Defendants Michael D. Smith, Christopher Cello Smith, Shaun Michael Smith, Ray Garton, Joshua Harris for their involvement in this scheme, in Frankfort Criminal Action No. 08-cr-31-JMH, as well as Mark Irwin for his role as charged in Frankfort Criminal Action No. 10-cr-1-JMH.  The Court will now order restitution for the victims of their crimes.

## II.  Discussion

### A.  Overview

Under the Mandatory Victim Restitution Act (the "MVRA"), 18

U.S.C. § 3663A, this Court must order a defendant to pay restitution to a victim of certain offenses, including any offenses under Title 18 of the United States Code. 18 U.S.C. § 3663A(a)(1); *United States v. Johnson*, 378 F.3d 230, 244 (2d Cir. 2004) (emphasis added). There is no question in this case that each of the defendants either entered a guilty plea or was convicted by a jury of offenses under Title 18. A victim under the MVRA is defined as a person or entity "directly or proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2); *United States v. Newsome*, 322 F.3d 328, 338 (4th Cir. 2003). An individual defendant convicted of conspiracy must pay restitution resulting from the conduct of the entire conspiracy, i.e., "to all the victims of the reasonably foreseeable acts of his co-conspirators," and not simply reimburse the losses resulting from his individual conduct. *United States v. Bogart,* 576 F.3d 565, 576 (6th Cir. 2009); *Newsome*, 322 F.3d at 338. Similarly, defendants convicted of fraud offenses involving a scheme element, such as mail and wire fraud, are liable for restitution for losses arising out of the entire scheme, not just restitution for losses that can be tied to a particular count of conviction. *United States*

*v. Davis*, 170 F.3d 617, 627 (6th Cir. 1999); *see also United States v. Johnson*, 132 F.3d 1279, 1287-88 (9th Cir. 1997); *United States v. Martin*, 195 F.3d 961, 968-69 (7th Cir. 1999); *United States v. Booth*, 309 F.3d 566, 576 (9th Cir. 2002). The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense, however, is on the Government. 18 U.S.C. § 3664(e).

Restitution orders issued under the MVRA are to be enforced pursuant to the provisions of 18 U.S.C. § 3664. See 18 U.S.C. § 3663A(d). Section 3664 does not allow a court to consider a defendant's ability to pay when setting the amount of restitution; rather, the amount must be set at the full amount of the victims' losses. 18 U.S.C. § 3664(f)(1)(A). The court, however, in setting a payment schedule for the restitution should consider: (1) the defendants' financial resources and assets; (2) defendants' projected future cash flow; and (3) defendants' financial obligations. 18 U.S.C. § 3664(f)(2). If the court finds multiple defendants culpable for the "loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h). The defendant bears the burden of proof of establishing his financial condition. 18 U.S.C. § 3664(e). In addition, "if the court finds

that more than 1 victim has sustained a loss requiring restitution by a defendant, the court may provide for a different payment schedule for each victim based on the type and amount of each victim's loss and accounting for the economic circumstances of each victim." 18 U.S.C. § 3664(I). A district court's restitution order is reviewed for abuse of discretion. *United States v. Lively*, 20 F.3d 193, 200 (6th Cir. 1994).

**B.    The Government's Position**

The United States takes the position that all investors in Target Oil & Gas were victims as that term is defined in the MVRA and suffered actual losses in this matter of $13,691,320.43, an amount which includes all investor dollars paid to Target Oil & Gas (including completion fees) during the period of the indictment, less any amounts paid back to those investors. The government has presented evidence of the identity those investors, the amount of money they invested, and the monies returned to them, all summarized in Second Amended Attachment A and supported by the Government's Sentencing Exhibits 1 through 8, including victim impact statements, bank records, operating agreements, canceled checks, and written correspondence, and those similar exhibits offered with respect to victims Dennis Prohaska, Walter Laymon, and OGTPRS, as exhibits to the Second Amended Attachment A.    The government proposes that an apportioned, rather than joint and several, restitution judgment would best address the issues

presented in this matter due to the length of the scheme, the nature of the evidence of loss, the number of victims, and the varying lengths and levels of involvement of the various defendants.

**C.   The Defendants' Positions**

Defendants Shaun Michael Smith, Joshua Scott Harris, and Ray Garton, as well as Mark Irwin, have raised no objection with respect to the Government's proposed order of restitution. Further, Defendants Michael and Christopher Smith do not dispute that the individuals identified invested in Target Oil & Gas or that $13,691,320.43 is the amount of investor dollars paid to Target Oil & Gas when completion fees are considered and amounts returned to investors disregarded during the period of the indictment.  Rather, they object to the fact and amount of restitution requested by the United States on four grounds, each of which present a question of law for this Court.

First, they argue that the United States has failed to identify with sufficient specificity the "scheme" from which their liability arises as required by the MVRA.  Next, they argue that, as a matter of law, the United States is seeking recovery of restitution which far exceeds any amount available to victims with respect to the counts of convictions determined by the jury, i.e., they question the legal extent of the behavior that may serve as the foundation for an order of restitution.  In support of his

position, Michael D. Smith reasons, as well, that investors knew that they were making an investment in a high risk field and cannot complain of being victims of that risk. Finally, Michael D. and Christopher Cello Smith argue that the United States has failed to support the relief requested by a preponderance of the evidence with respect to the number and identity of the victims and the amount of loss experienced by those individuals. In a completely separate vein, Christopher Cello Smith also urges the Court to exercise its discretion not to enter an order of restitution, considering the complexities of this case.

### D. Victims and Scope of Criminal Actions for Which Restitution Maybe Awarded to Victims

The first issue placed before this Court by Defendants Michael D. Smith and Christopher Cello Smith is whether all of the individuals identified by the United States are "victims" for whom restitution can be ordered from the defendants in this matter under the MVRA. The MVRA, 18 U.S.C. §§ 3663A and 3664 requires the Court to order restitution to all victims of "any offense committed by fraud or deceit." 18 U.S.C. §§ 3663A(a)(2) and (c)(1)(A)(ii). A "victim" is defined as:

> a person directly and proximately harmed as a
> result of the commission of an offense for
> which restitution may be ordered including, in
> the case of an offense that involves as an
> element a scheme, conspiracy, or pattern of
> criminal activity, any person directly harmed
> by the defendant's criminal conduct in the
> course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2).  The government must prove the amount of each victim's loss by a preponderance of the evidence.  18 U.S.C. § 3664(e).

The United States posits that all investors in Target Oil & Gas investments during the time period identified in the indictment were "victims" as defined in the MVRA.  Defendants Michael D. and Christopher Cello Smith argue, however, that there can be no "victims" as defined in the MVRA in this matter because the government has failed to identify with sufficient specificity the "scheme" from which injury to anyone flowed.  They argue, as well, that the government has not properly limited the universe of Target Oil & Gas investor victims to those directly harmed by the criminal conduct which is the subject of the present case as convicted by the jury – i.e., the government has not limited its request to those "victims" who received or made the mailings alleged in the various counts of conviction or to those individuals who were somehow directly impacted by those mailings because they invested in the particular well which was the subject of the mailing.

The MVRA requires this Court to order restitution in cases of mail fraud, among other federal crimes, to the extent that victims would have been entitled to recover in a civil suit against the criminal defendant.  *See United States v. Dokich*,  614 F.3d 314, 318 (7th Cir. 2010) (citing 18 U.S.C. § 3663A(c)(1)(A)(ii); *United States v. Pawlinski*, 374 F.3d 536, 539 (7th Cir. 2004); *United*

-10-

*States v. Martin*, 195 F.3d 961, 968 (7th Cir. 1999)). "While restitution awards typically require a direct causal relationship between the defendant's personal conduct and a victim's loss, in the case of mail fraud, a crime that 'involves as an element a scheme, conspiracy, or pattern of criminal activity,' the MVRA imposes joint liability on all defendants for loss caused by others participating in the scheme." *Id.* (citing 18 U.S.C. § 3663A(a)(2); *Martin*, 195 F.3d at 968-69); *United States v. Bogart*, 576 F.3d 565, 576 (6th Cir. 2009).

"In the context of a conspiracy, it is clear that a defendant is liable in restitution to all the victims of the reasonably foreseeable acts of his co-conspirators. No court has ever held to the contrary." *United States v. Collins*, 209 F.3d 1, 3 (1st Cir. 1999); *see also United States v. Elson*, 577 F.3d 713, 722-23 (6th Cir. 2009) (supporting broad restitution on conspiracy grounds). Similarly, defendants convicted of fraud offenses involving a scheme element, such as mail and wire fraud, are liable for restitution for losses arising out of the entire scheme, not just restitution for losses that can be tied to a particular count of conviction. *United States v. Davis*, 170 F.3d 617, 627 (6th Cir. 1999); *see also United States v. Johnson*, 132 F.3d 1279, 1287-88 (9th Cir. 1997); *United States v. Martin*, 195 F.3d 961, 968-69 (7th Cir. 1999); *United States v. Booth*, 309 F.3d 566, 576 (9th Cir. 2002). When a defendant is convicted by a jury, the indictment

defines the scope of a criminal scheme for restitution purposes. *See United States v. Jones*, 641 F.3d 706, 714 (6th Cir. 2011); *United States v. Ramirez*, 196 F.3d 895, 900 (8th Cir. 1999) (construing former version of 18 U.S.C. § 3663A).

The Smiths' indictment defined the scheme as a broad, over-arching plan as follows:

> . . . a scheme and artifice to defraud and to obtain money from persons throughout the United States who could be and were inducted to enter into investment contracts with Target Oil and Gas Corporation and Kentucky Indiana Oil and Gas Corporation and to purchase shares in oil and gas well drilling programs by false and fraudulent pretenses. . . .

Count 1 of the Indictment charges Defendants Michael D. Smith, Ray Garton, Christopher Cello Smith, Shaun Michael Smith, and Joshua Scott Harris, as well as Mark Irwin (against whom these charges have now been dismissed) with conspiring "to devise" that scheme and artifice. In Counts 2-21, the Indictment charged that, in violation of 18 U.S.C. § 1341 and "[f]or the purpose of executing the scheme to defraud" listed in Count 1, the defendants, including Michael D. Smith and Christopher Cello Smith, made or caused to be made the mailings identified in each of those counts. In other words, the scheme was well and adequately defined for the purposes of trial and is equally well defined for the purposes of determining appropriate restitution for victims under the MVRA.

Further, when the jury returned verdicts of guilty for

Christopher Cello Smith on Counts 3, 4, 5, 6, and 13 and for
Michael D. Smith on Counts 1 (as to mail fraud), 2, 3, 4, 5, 6, 13,
18, 19, and 20, they were adjudged guilty of having knowingly
participated in the Target Oil & Gas investment scheme and became
jointly responsible for the losses of victims stemming from the
Target Oil & Gas investment scheme, i.e., all of the investments
made that were not recouped by investors through returns over the
course of the scheme.[2]  It is of no practical consequence to this
Court with respect to the issue of restitution that Christopher
Cello Smith was acquitted of the conspiracy charged in Count I or
that he and Michael D. Smith were acquitted with respect to a
number of the other counts in the indictment.[3]  The fact is that
the jury concluded from the evidence presented that both of these
defendants took actions to further the scheme described in the

---

[2]  The jury returned verdicts of "not guilty" for Christopher
Cello Smith on Counts 1, 2, 7, 8, 9, 10, 12, 14, 16, 18, 20, 21,
22, and 23. As to Michael D. Smith, the jury returned a verdict of
"not guilty" on Counts 1 (as to wire fraud), 7, 8, 9, 10, 12, 14,
16, 21, 22, and 23.  While the jury also returned verdicts of
"guilty" as to both of these Defendants on Counts 15 and 17, the
Court subsequently sat aside the verdict and entered a judgment of
acquittal with respect to Count 17 [DE 379] and dismissed Count 15
[DE 587].

[3]  Further, "a defendant may not upset a verdict solely
because the verdict is not reconcilable with other verdicts
rendered for or against the defendant." *United States v. Conaster*,
514 F.3d 508, 519 (6th Cir. 2008).  The Court is not persuaded that
the verdicts returned against these defendants are not reconcilable
when considered together, as explained above, nor will the Court
allow Defendants' efforts to obfuscate the jury's verdict so as to
derail the restitution to Defendants' as required under the MVRA.

Indictment. It follows that, by virtue of Christopher Cello Smith's conviction for mail fraud, he is jointly responsible with his co-defendants to pay restitution for all loss actually caused to victims by the operation of the Target Oil & Gas investment scheme. The same is true of Michael D. Smith.

The victims in this case, for the purposes of restitution under the MVRA, are the investors in Target Oil & Gas for the period of the indictment. All of these investors were, in the Court's opinion, directly and proximately harmed as a result of the instances of mail fraud committed which were central to perpetuating the investment scheme. Restitution to each of these persons by each of the defendants is appropriate since the convictions were – universally – for offenses that involved as an element a common scheme of criminal activity.

### E.  Amount of Loss

As to the amount of restitution to be ordered, restitution is designed to make a victim whole – no more, no less. *United States v. Lively*, 20 F.3d 193, 201-02 (6th Cir. 1994). The Court "must base its order of restitution on actual losses." *United States v. Riddell*, 328 F. App'x 328 at *1 (6th Cir. 2009) (citing *United States v. Simpson*, 538 F.3d 459, 465-66 (6th Cir. 2008) and *United States v. Finkley*, 324 F.3d 401, 404 (6th Cir. 2003)). For this reason, the Court must give credit for repayment made to their victims up to the point of sentencing.

-14-

Although a district court may look to intended loss in calculating total loss under the sentencing guidelines, it must base its order of restitution on actual losses. *See United States v. Simpson*, 538 F.3d 459, 465-66 (6th Cir. 2008) ("It is true that the MVRA . . . refers only to 'actual' loss, and unlike § 2B1.1 of the Guidelines does not include 'intended loss.'"); *see also United States v. Finkley*, 324 F.3d 401, 404 (6th Cir. 2003) (remanding where the government conceded that the district court erred by awarding restitution in the amount of intended loss instead of actual loss).

The Court is not persuaded by Michael D. Smith's argument that at least some if not all of the loss experienced by investor-victims in this scheme resulted not from the scheme but from their investment in a business which has a "high-risk, speculative nature." [Brief at 2.] It may be true that in oil and gas investment there "will necessarily be many 'losses' no matter how cleanly the business is run," as he suggests, but the fact of the matter is that the Target Oil & Gas scheme was operated in such a way as to obscure the true nature of the risk on which investors were placing their bets. Fraud is fraud, regardless of the risk involved. While the evidence presented at trial provided a clear portait of defendants who operated a company and encouraged or participated in a business whose sales' modus operandi was to say and promise almost anything to persuade people to provide their

funds, the relevant conclusion when it comes to the question of restitution is that all of this investor money was taken in by virtue of fraudulently presented oil well programs and/or, at best, by sales pitches that relied on prior (often fraudulently presented and sold) investments to encourage individuals to participate. Having reached that conclusion, everything taken in and not paid back out by the operation of Target Oil & Gas as part of the scheme, is properly the subject of a restitution order.

**F.  Apportioned Liability**

Christopher Cello Smith also argues there are significant drawbacks to either an order imposing joint and several liability or an order imposing an apportioned liability for restitution.  As such, he urges the Court to conclude that this is an instance under 18 U.S.C. § 3663A(c)(3) where it would be appropriate to enter no order of restitution.  He reasons that it is impossible to fashion a restitution order in this matter that accurately reflects the actual losses of the alleged victims and the participation of the individual defendants in the scheme to which any such losses can be attributed – and that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

The Court has considered his argument and concludes that any difficulty posed by the situation before it is not a barrier to the imposition of an appropriate restitution order in this matter. Frankly, the permissible options allow the Court to take into

consideration not only the actual losses of the victims but also the relative involvement of the individuals in the scheme. *See United States v. Williams*, 612 F.3d 500, 510 (6th Cir. 2010) (citing 18 U.S.C. § 3664(h)) ("When ordering restitution in a case where the district court determines that multiple defendants have contributed to a victim's loss, 'the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.'"); *see also United States v. Bogart*, 576 F.3d 565, 576 (6th Cir. 2009) ("Even while the district court has the option under § 3664(h) to apportion the restitution payment among defendants, it is not required to do so."). In this matter, the Court agrees with the United States that an apportioned sentence will be sufficient to reflect the defendant's relative involvement and contribution to the fraud committed on these investor-victims. The apportionment is set forth below.

## II. Findings

Accordingly, after a careful review of the presentence reports and the record and in light of the law, cited above, and the verdict returned by the jury, the Court makes the following additional findings, consistent with 18 U.S.C. § 3664(e), by a preponderance of the evidence:

(1) The Target Oil & Gas scheme began in 2003 and continued

until at least 2008. During that time frame, Target Oil & Gas's
practices, including its sales activities, field operations,
investor relations, management, and financial maneuvers, among
other things, were so thoroughly infused with fraud as to make the
entire company and its business practices a sham. The Court is not
blind to the fact that the evidence shows that drilling occurred
and that some natural gas was obtained from wells drilled using
Target Oil & Gas investor funds. Nor is the Court oblivious to the
fact that there were many sales to many investors for which it is
unaware of the particulars – the pitch, the materials mailed, etc.
– during the indictment time frame and of which it is only aware of
the fact of the sale and the amount of the investment made. The
evidence demonstrates, however, that each and every sale and
investment was tainted by the misrepresentations made in the
efforts to bring investors on board. The Target Oil & Gas scheme
was operated in such a way as to obscure the true nature of the
risk on which investors were placing their bets. The intent to
defraud was spread throughout the offerings available to investors
because those pitching the sales relied on prior (fraudulently
sold) investments to encourage individuals to participate – as
though the risk had been adequately explained to investors in the
prior programs.

(2) The Court further finds, as it has previously done during
the sentencing hearings in this case, that due to the fraudulent

nature of the company, any individual who invested in Target Oil & Gas or paid associated completion fees to Target Oil & Gas between the dates charged in the Indictment is a victim, as that phrase is described in 18 U.S.C. § 3663A, directly and proximately harmed by the offenses of conviction.

(3) The Court finds that the Government's Second Amended Attachment A accurately reflects the identities of the known victims, their losses, and reductions in loss for royalties they received from or on behalf of Target Oil & Gas. Therefore, the total loss for restitution purposes, as is reflected in Column E of the Second Amended Attachment A, is $13,691,320.43.

(4) Consistent with 18 U.S.C. § 3663A and the cases cited in the Government's restitution brief, the Court finds that, whether the count or counts of conviction involve conspiracy or simply substantive scheme language, each defendant may be, and here should be, held accountable for restitution based on losses caused by the defendant and all reasonably foreseeable losses caused by other participants in connection with the scheme or conspiracy. Given the totality of the evidence in this case, the Court further finds that it was reasonably foreseeable to every participant in the Target Oil & Gas scheme that all of the other employees or participants in the company, including sales people, managers, geologists, etc., would victimize or further the victimization of every Target Oil & Gas investor.

(5) The Court is aware that 18 U.S.C. § 3664(h) and prevailing case law permit, but do not require the Court to enter an apportioned, rather than joint and several restitution order. Given the special factual problems presented by the length of the scheme, nature of loss evidence, number of victims, and the varying lengths and levels of involvement of the many criminal participants, an apportioned, rather than joint and several, restitution judgment would best address the restitution issues presented in this case. Consistent with 18 U.S.C. § 3664(h), an apportioned restitution judgment will fairly reflect the relative involvement or culpability of participants, while factoring in financial resources and likely future earnings of individual defendants.

(6) Consistent with the Court's previous sentencing findings and their respective presentence reports, the Court finds that Michael Smith and Ray Garton's criminal involvement in the Target Oil & Gas scheme spanned the entire life of the conspiracy (2003 to 2008); Christopher Cello Smith's criminal involvement in the scheme spanned from 2003 until at least late-2006; Shaun Michael Smith was criminally involved from 2005 until 2008; Joshua Harris' criminal involvement began sometime in 2005 and continued until 2008; and Mark Irwin was criminally involved from at least 2006 until 2008.

(7) In keeping with its previous sentencing role adjustment on Michael Smith, the Court finds that he was the owner and

organizer of Target Oil & Gas. Comparatively speaking, Michael Smith was the most involved individual in the scheme and, ultimately, responsible for the development, promotion, and maintenance of the scheme which victimized investors. Given his comparatively larger share of the criminal proceeds and his control of much of the scheme, the Court finds that its apportioned restitution judgment should be weighted more heavily against Michael Smith than those who served under him. In light of these considerations, and in order to reflect the level of contribution to the victims' losses and economic circumstances of each defendant (see 18 U.S.C. § 3664(h)), the Court orders that restitution be apportioned 40% to Michael D. Smith and 12% apiece to Christopher Cello Smith, Shaun Michael Smith, Mark Irwin, Ray Garton, and Joshua Harris.

Accordingly, based upon its findings **IT IS ORDERED:**

(8) that Michael D. Smith shall make restitution in the amount of $5,476,528.17, totaling 40% of the total $13,691,320.43 loss amount subject to restitution, payable on a pro rata basis to all of the victims listed in the Government's Second Amended Attachment A.

(9) that Christopher Cello Smith, Shaun Michael Smith, Ray Garton, Joshua Harris, and Mark Irwin shall each make restitution in the amount of $1,642,958.45 apiece, totaling 12% each of the total $13,691,320.43 loss amount subject to restitution, payable on

a pro rata basis to all of the victims listed in the Government's Second Amended Attachment A.

(10) that, within ten (10) days of entry of this Memorandum Opinion and Order, the United States of America shall provide addresses for the victims listed in the Second Amended Attachment A to the finance division of the office of the Clerk of Court. The United States of America shall contact the finance division of the office of the Clerk of Court for further instructions on submitting that information.

This the 11th day of May, 2012.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge